IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| LUKE ADAM STANTON, SR., #1830011 | § | |
| VS. | § | CIVIL ACTION NO. 4:16cv620 |
| DIRECTOR, TDCJ-CID | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Petitioner Luke Adam Stanton, Sr., an inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For reasons set forth below, the Court finds that the petition is not well-taken and that it will be denied.

### Procedural History of the Case

Stanton is challenging his Denton County convictions for multiple sex-based offenses against K.B., R.B., and A.A. in three cases tried together: cause numbers F-2011-1911-C (Counts I-IV committed against K.B.), F-2011-1912-C (Counts I-IV committed against R.B.), and F-2011-1913-C (a single count committed against A.A.). After a jury trial, he was sentenced on the various counts on August 24, 2012. In F-2011-1911-C, he was sentenced to fifteen years of imprisonment for sexual assault (Count I) and fifteen years of imprisonment on each count of indecency with a child (Counts II-IV), with the sentences running consecutively. In F-2011-1912-C, he was sentenced to forty years of imprisonment for continuous sexual abuse of a young child (Count I) and fifteen years on each count of indecency with a child (Counts II-IV), with the sentences running consecutively. In F-2011-1913-C, he was sentenced to ten years of imprisonment for indecency with a child. The convictions were affirmed. *Stanton v. State*, No. 08-12-00293-CR, 2014 WL 5100102, 08-12-00294-CR, 2014 WL 5100106, 08-12-00295-CR, 2014 WL 5100107 (Tex. App. - El Paso Oct. 10, 2014, pet. ref'd). The Texas Court of Criminal Appeals refused his petition for discretionary review on March 4, 2015.

Stanton filed an application for a writ of habeas corpus in state court. SHCR[1] at 1. The trial court issued findings of fact and conclusions of law. *Id*. at 333-340. On January 13, 2016, the Texas Court of Criminal Appeals denied the applications without written order on findings of the trial court without a hearing.

The present petition (Dkt. #1) was filed on August 18, 2016. Stanton attached a memorandum of law in support of the petition. He brings the following grounds for relief:

1. *Brady*[2] violations by investigative agencies;

2. Prosecutor misrepresented the physical evidence;

3. Bad faith destruction of potentially exculpatory evidence;

4. Prosecutor used perjured testimony; and

5. Ineffective assistance of counsel.

The Director filed an answer (Dkt. #23) on February 11, 207. Stanton filed a response (Dkt. #36) on March 30, 2017.

<u>Factual Background of the Case</u>

The Eighth Court of Appeals discussed the facts of this case as follows:

A jury found [Stanton] guilty of multiple sex-based offenses committed against K.B., R.B., and A.A. in three cases tried together.

\* \* \*

R.B. and K.B. were [Stanton's] stepdaughters at the time these offenses were committed. R.B., who was sixteen years of age when this case was tried in August 2012, testified that [Stanton] touched her vagina "almost daily" both before and after she turned fourteen years of age. The first incident occurred when she was 10 or 11 years of age. [Stanton] rubbed ointment on mosquito bites on her legs and he gradually moved his hand until he was touching her vagina over her clothes. R.B. reported the incident to her mother, K.S., and K.S. replied that she would talk to [Stanton]. When K.S. asked [Stanton] about R.B.'s statement, [Stanton] denied any wrongdoing. [Stanton] continued to assault R.B. by touching her genitals both on top of and under her clothing on many other occasions. She explained that he often began by rubbing her feet and legs, but he eventually moved his hand so that he was touching her vagina.

---

[1]"SHCR" refers to the state habeas clerk's record, followed by the page number(s). State habeas clerk's records were compiled for all three cause numbers, and the references herein relate to WR-79,389-09 (Dkt. ##25-23 through 25-24).

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

2

R.B. also testified that [Stanton] touched and squeezed her breast with his hand. R.B. told her mother what [Stanton] was doing to her, but K.S. did not believe her.

K.B. was twenty years old at the time of trial. K.B. testified that when she was in the fourth grade, [Stanton] came into her bedroom at night, reached under the covers, and squeezed her vagina with his hand. K.B. kicked him and pulled away from him. [Stanton] then left the room. On another occasion when K.B. was about to enter the fifth grade, she and R.B. were having a water gun fight in the pool. [Stanton] was also in the pool and he got behind K.B. and pulled her onto his lap. [Stanton] moved K.B.'s hands under the water and made her touch his penis. He also moved her swimsuit bottom and tried to penetrate her with his penis. She tried to pull away because it hurt but he would not let go of her. K.B. did not cry out because she did not want to scare R.B. who was only five or six years of age at the time. [Stanton] finally let her go and she got out of the pool. In another incident, [Stanton] pulled down K.B.'s pants and underwear and touched her genitals with his mouth and tongue. K.B. tried to kick him and get away but he held her down. K.B. testified that [Stanton] continued to touch her genitals with his hands and mouth on many other occasions when her mother was at work. These incidents occurred at least twice a week for six years or, in the words of K.B., "[t]oo many times to count." K.B. recalled that whenever she rejected [Stanton's] advances completely, he would be mean to her and R.B. When K.B. was in elementary school, she tried to tell her mother that [Stanton] had touched her genitals, but K.S. responded by questioning whether K.B. was confused or mistaken about what had happened. K.B. insisted she was not mistaken and her mother talked to [Stanton] about it. He denied it.

In 2008, R.B. told her school counselor what [Stanton] had done. K.S. took both R.B. and K.B. to the Children's Advocacy Center in Lewisville. Prior to the interview, K.S. asked R.B. if she could be mistaken or if it could have been an accident. K.B. described her mother as being "panicky" prior to the interviews and she told K.B. that they could be taken away from her and they might never see one another again. R.B. and K.B. did not tell the truth during their interviews because they were scared. [Stanton] continued to touch both of them inappropriately. In 2009, they were interviewed again but this time reported what [Stanton] had been doing to them. Nothing happened and [Stanton] returned home. He also continued to molest them.

In May of 2011, thirteen-year-old A.A. visited at R.B.'s home. [Stanton] got onto the bed where R.B. and A.A. were watching television and began rubbing A.A.'s feet. A.A. thought it was weird but she trusted him. [Stanton] moved from A.A.'s feet to her legs and he gradually moved his hand higher until he was touching her butt and vagina. He suddenly stopped when R.B.'s mother got home from work and walked into the room. A.A. told R.B. what had happened when they went to A.A.'s house. A.A. reported the assault to a school counselor a week later. On June 1, 2011, R.B. used her cellphone to secretly record [Stanton] touching her inappropriately. After K.B. saw the video, she took R.B. to the Sheriff's Office rather than telling their mother because she was afraid that her mother or [Stanton] would delete the videos. Law enforcement conducted an investigation and a grand jury returned three indictments against [Stanton].

*Stanton*, 2014 WL 5100102 at *1-2; *Stanton*, 2014 WL 5100106 at *1-2; *Stanton*, 2014 WL 5100107

at *1-2.

3

Standard of Review

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

The petition was filed in 2016, thus review is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted). With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540

U.S. 12, 15-16 (2003)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). As such, "evidence later introduced in federal court is irrelevant." *Id.* at 184. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). With respect to § 2254(d)(2), a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing § 2254(e)(1)). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). More recently, the Supreme Court held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted).

Discussion and Analysis

1. *Brady* Violations by Investigative Agencies
3. Bad Faith Destruction of Potentially Exculpatory Evidence

Stanton's first and third claims are related. In the first claim, he alleges that the State withheld evidence complied by State investigative agencies, in violation of *Brady v. Maryland*, *supra*. He claims that the State did not disclose Denton Police Department Detectives' testimony or their reports to the defense or trial court. He claims that favorable evidence of recapitulation of K.B.'s, R.B.'s, and K.S.'s statements were essential to the investigation. He further claims that the State did not disclose 15 of 20 video clips secretly recorded by R.B. He finally alleges that the State did not disclose text talk on R.B.'s cell phone. In his third claim, he alleges that the State destroyed evidence which may have had "exculpatory value."

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to provide favorable evidence includes impeachment evidence as well as exculpatory evidence.

5

*United States v. Bagley*, 473 U.S. 667, 676 (1985). In order to prevail on a *Brady* claim, the Fifth Circuit requires a petitioner to show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to his guilt or innocence. *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (citations omitted). "Evidence is 'material' only when there exists 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (citing *Bagley*, 473 U.S. at 682). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *West*, 92 F.3d at 1399 (citation omitted). The State in under no duty "to make a complete and detailed accounting to defense counsel of all investigatory work done." *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir.), *cert. denied*, 513 U.S. 1060 (1994).

The Director persuasively argues that Stanton has not satisfied the requirements of showing a *Brady* violation. Stanton provides nothing more than speculation that the evidence about which he complains had exculpatory or impeachment value, and he provides no support for his conclusory assertion that the State withheld or suppressed that evidence. Pet. Memo at 13–16. Conclusory allegations and bald assertions are insufficient to support a petition for a writ of habeas corpus. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Furthermore, Stanton fails to demonstrate that any materiality attached to that evidence was absent from the other testimony presented or elicited at trial. *Id*. Thus, Stanton's *Brady* claim has no factual basis and lacks merit.

With respect to Stanton's third claim, the Supreme Court distinguished a *Brady* violation from the State's destruction of evidence as follows:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been

6

subjected to tests, the results of which might have exonerated the defendant. . . . We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.

*Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). The Director persuasively argues that Stanton's claims that the State destroyed exculpatory evidence fail because he has provided nothing more than his own assertions to support his claims that the State willfully destroyed evidence that was exculpatory. Pet. Memo. at 23. Once again, conclusory allegations and bald assertions are are insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011.

Stanton's first and third claims were fully developed during the state habeas corpus proceedings. Michael Dickens, the lead prosecutor, submitted an affidavit stating that he provided Stanton's attorney with all the evidence known to him that he believed would have been considered either exculpatory or favorable to Stanton. SHCR at 242. He went on to itemize the material he provided to defense counsel. *Id.* at 242-44.

After considering all of the evidence, the state trial court entered the following findings of fact:

3.  Michael Dickens' affidavit states that he provided [Stanton's] trial attorney with all known exculpatory or favorable evidence (citation omitted). Mr. Dickens is credible.

4.  Additionally, there are emails and copies of discs that show Mr. Dickens turned over evidence to [Stanton's] attorney, J.R. Moore, and worked with him to investigate into whether there was any further evidence (citation omitted).

5.  Mr. Moore filed a motion in limine concerning the smart phone videos . . . and that his objections to the video would be relevan[t] and that the videos' probative value was outweighed by its prejudicial effect (citation omitted).

6.  [Stanton] does not address how the names of Denton Police Department detectives and their investigating reports or missing text messages from R.B.'s smartphone were favorable to his defense. The videos that R.B. secretly took of [Stanton] touching her were not favorable to [Stanton].

7.  [Stanton] has not shown that any allegedly withheld evidence was material.

12. There was no evidence that the "ruled out" reports or content on R.B.'s smartphone were destroyed in bad faith.

SHCR at 334-35. As a conclusion of law, the trial court found that Stanton was not entitled to relief under *Brady* and that he had not shown that any exculpatory evidence was destroyed in bad faith or not under normal practices. *Id.* at 336-37 (nos. 2, 5). The Texas Court of Criminal Appeals, in turn, denied the application for a writ of habeas corpus without written order on findings of the trial court without a hearing. Stanton is not entitled to relief on grounds one and three because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

2. <u>Prosecutor Misrepresented Physical Evidence</u>
4. <u>Prosecutor Use Perjured Testimony</u>

Claims two and four involve allegations of prosecutorial misconduct. In claim two, Stanton alleges that the prosecutor misrepresented physical evidence. In claim four, he alleges that the prosecutor used perjured testimony. With respect to claim two, he asserts that the prosecutor knew the date that R.B. secretly made video recordings was not on June 11, 2011. He claims that the State altered the video recording to bolster the credibility and truthfulness of the State's witnesses. His perjury claim is based on alleged contradictory statements and inconsistencies from witnesses.

The standard for granting habeas corpus relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To prevail on a claim of prosecutorial misconduct in a state habeas corpus proceeding, a petitioner must show that the prosecutor's actions were so egregious as to render the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Cobb v. Wainwright*, 609 F.2d 754, 756 (5th Cir.), *cert. denied*, 447 U.S. 907 (1980). His actions must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

With respect to Stanton's perjury claim, "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth

8

Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted). Moreover, the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* (citations omitted). The Fifth Circuit applied the standards set forth in *Napue* and *Giglio* in *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir.), *cert. denied*, 536 U.S. 978 (2002). A petitioner must prove that the prosecution knowingly presented or failed to correct materially false testimony during trial. *Id.* at 337. Due process is not implicated by the prosecutions's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements. *Id.* Perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness' testimony and conflicts between reports, written statements and the trial testimony of prosecution witnesses. *Koch*, 907 F.2d at 531. To prove a due process violation, a petitioner must demonstrate: (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). Perjured testimony is material only when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000), *cert. denied*, 531 U.S. 1134 (2001).

In the present case, the Director observes that Stanton's claims are essentially an attack on the sufficiency of the evidence, but any claim that he may raise at this time regarding the sufficiency of the evidence is unexhausted and procedurally barred. The Director persuasively argues that Stanton has shown nothing more than contradictory testimony from witnesses, inconsistencies within a witness' testimony, and/or conflicts between reports and written statements and the trial testimony of prosecution witnesses, which do not, standing alone, establish perjury. *Koch*, 907 F.2d at 531.

9

The prosecutorial misconduct claims were fully developed during the state habeas corpus proceedings. The trial court issued the following findings of fact:

10. There was no evidence that the State altered any phone evidence, as [Stanton's] appellate counsel stated that after interviewing [Stanton], his trial counsel, and the lead prosecutor, he found there was no evidence that the evidence was altered (citation omitted).

11. The State did not use false evidence to convict [Stanton].

13. [Stanton] has not shown that Investigator Crow made any misleading statements about the 2009 interviews with the intent to deceive the Court or the jury.

14. [Stanton] has not shown his preferred expert witnesses were available to testify at his trial.

15. [Stanton] fails to show the 2008 outcries by K.B. and R.B. were inadmissible.

SHCR at 335. As a conclusion of law, the trial court found that Stanton "has not shown that the State used perjured testimony, and even if the State had used perjured testimony [Stanton] has not shown by a preponderance of the evidence how Investigator Crow's alleged perjured testimony contributed to [Stanton's] conviction or punishment." SHCR at 337 (no. 6). The Texas Court of Criminal Appeals subsequently denied the application for a writ of habeas corpus without written order on findings of the trial court without a hearing. Stanton is not entitled to relief on grounds two and four because he has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

5. <u>Ineffective Assistance of Counsel</u>

Stanton's final claim is ineffective assistance of counsel. He alleges that his trial attorney, John R. Moore, was ineffective for failing to conduct a reasonable pretrial investigation. He alleges that his appellate attorney, Steven S. Poston, was ineffective for failing to address trial errors with arguable merit.

Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. Under the second prong, the petitioner must show that his attorney's deficient performance resulted in actual prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

The two-prong *Strickland* test applies to claims of ineffective assistance of counsel by both trial and appellate counsel. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). An indigent defendant does not have a constitutional right to compel appointed counsel to include every nonfrivolous point requested by him; instead, an appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531-32 (5th Cir. 2008) (citation and internal quotation marks omitted); *Adams v. Thaler*, 421 F. App'x 322 (5th Cir. 2011). To demonstrate prejudice, a petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001) (citations omitted).

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded state court decisions, which has been referred to as "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 102. *Also see Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013).

Stanton alleges that his trial attorney was ineffective for failing to conduct a reasonable pretrial investigation. Stanton is correct in his assertion that counsel had a duty to conduct a reasonable amount of pretrial investigation. *See Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir. 1986). "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). With respect to witnesses, the Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To succeed on the claim, a petitioner must show that had counsel investigated the claim he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on his behalf. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. den.,* 469 U.S. 1041 (1984). Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness severely undermines a claim of ineffective assistance. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). *See also King v. Cockrell*, 33 F. App'x 703 (5th Cir. 2002).

In the present case, the Director persuasively argues that Stanton's allegations of ineffective assistance of trial counsel are conclusory. Moreover, he failed to demonstrate prejudice. He has failed to show ineffective assistance of trial counsel. He likewise failed to demonstrate how he was prejudiced at the appellate level. His ineffective assistance of counsel claims lack merit.

The Court further observes that Stanton's ineffective assistance of counsel claims were fully developed in the state habeas corpus proceedings. After considering the evidence, the trial court issued the following findings of fact:

14. [Stanton] has not shown his preferred expert witnesses were available to testify at his trial.

16. Mr. Moore attempted to keep the smartphone videos out of evidence and the videos were authenticated by R.B. (citation omitted).

17. Mr. Moore was [Stanton's] third attorney, Mr. Moore received discovery, and Mr. Dickens stated that Mr. Moore received all exculpatory or favorable evidence (citation omitted).

18. Mr. Poston stated in a response to a grievance filed against him by [Stanton] that after interviewing Mr. Moore, [Stanton], and the lead prosecutor, he found Mr. Moore was not ineffective and a claim to that effect would be frivolous (citation omitted).

19. Mr. Poston is credible and diligently represented [Stanton] and [Stanton's] grounds on this application were not strong appellate issued (citation omitted).

SHCR 335-36.

The trial court went on to make the following conclusions of law:

7. [Stanton] has not shown his trial counsel was deficient for not presenting expert testimony. *King v. State,* 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). [Stanton's] arrest for unlawful possession of a firearm by a felon was admissible in punishment. *See* Tex. Code. Crim. Proc. Ann. art. 37.07 § 3 (West Supp. 2014). Failure to object to admissible evidence is not deficient performance; thus, [Stanton] has not shown any deficient performance. *See Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

8. Because [Stanton] has not shown what would have been revealed through a more thorough, in-depth investigation by his trial attorney, [Stanton's] claims on these grounds fail. *See Mooney v. State,* 817 S.W.2d 693, 696-697 (Tex. Crim. App. 1991).

9. [Stanton] has not shown that his trial counsel was not acting as a reasonably competent attorney. *Ex parte Chandler,* 182 S.W.3d 350, 354 (2005).

13

10. The ground addressed in this application for writ of habeas corpus would not have been legitimate appellate issues and [Stanton] has not shown how Mr. Poston's performance fell below professional norms. *See Bone v. State,* 77 S. W.3d 828, 833 (Tex. Crim. App. 2002).

11. Even if this Court finds that either [Stanton's] trial counsel or appellate counsel was deficient, [Stanton] has not shown that his counsels' deficient performance prejudiced his defense. *Bone,* 77 S.W.3d at 833; *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

SHCR at 337-38. The Texas Court of Criminal Appeals subsequently denied relief based on the findings of the trial court without a hearing.

Stanton has not shown that his attorneys' representation was deficient or that he was prejudiced by deficient representation, as required by *Strickland*. Relief should also be denied because he failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, he failed to overcome the "doubly" deferential standard that must be accorded to his attorneys in light of both *Strickland* and § 2254(d). *See Richter*, 562 U.S. at 105. The ineffective assistance of counsel claims lack merit.

In conclusion, Stanton's petition for a writ of habeas corpus lacks merit and should be denied.

## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 480 U.S. ___, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Stanton has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the

court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. at 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

In this case, reasonable jurists could not debate the denial of Stanton's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Accordingly, Stanton is not entitled to a certificate of appealability as to his claims. It is therefore

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled on are **DENIED**.

**SIGNED this 22nd day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE